## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:18-cv-62108-CMA

DANIEL GERSTENHABER,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                          **JURY TRIAL DEMANDED**

v.

GALLERIA FITNESS CLUB, LLC
d/b/a POWERHOUSE GYM FORT
LAUDERDALE,

      Defendant.
_____/

### UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES, AND COSTS

Plaintiff Daniel Gerstenhaber initiated this action against Defendants Galleria Fitness Club, LLC d/b/a Powerhouse Gym Fort Lauderdale, ("Galleria Fitness") and Clayton G. Flotz ("Mr. Flotz") (collectively referred to as "Defendants") (Plaintiff and Defendants collectively referred to as, the "Parties") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that he was sent an unauthorized marketing text message by Defendants. Through arm's-length negotiations, the Parties negotiated a settlement on behalf of Plaintiff and a class of approximately 3,809 consumers who were sent approximately 13,909 text messages by Defendants. On March 12, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and reimbursement of attorneys' fees for Class Counsel.

I.   **INTRODUCTION**

Plaintiff alleges that on August 23, 2018, he received a marketing text message from Defendants.  On September 6, 2018, Plaintiff initiated this litigation against Galleria Fitness in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, inter alia, monetary damages. The Complaint was later amended to include Mr. Flotz as an additional defendant. On January 9, 2019, Galleria Fitness' personal most knowledgeable witness was deposed by Plaintiff's counsel in Fort Lauderdale. Afterwards, the Parties entered into extensive settlement negotiations and eventually reached a settlement in principle. The Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The settlement requires Defendants to make available up to $600,000 for the benefit of the class. [DE #58-1].[1]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel Manuel S. Hiraldo, Hiraldo P.A., 401 E. Las Olas Boulevard, Suite 1400, Fort Lauderdale, Florida 33301, Ignacio J. Hiraldo, IJH Law, 1200 Brickell Ave., Suite 1950, Miami, FL 33131, and Michael Eisenband, Eisenband Law P.A., 515 E. Las Olas Blvd. Suite 120, Fort Lauderdale, FL 33301; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

II.   **MOTION FOR FINAL APPROVAL**

A.   **Procedural History**

On September 6, 2018, Plaintiff initiated this litigation against Galleria Fitness in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, inter alia, monetary damages. [DE #1]. On October 15, 2018, Galleria Fitness filed its Answer and Affirmative Defenses. [DE #15]. On December 7, 2018, Plaintiff filed a Motion for Leave to File his First Amended Complaint and add Mr. Flotz as a Defendant to this action. [DE #33]. Galleria Fitness' opposed Plaintiff's Motion for Leave. [DE #35]. On December 12, 2018, the Court granted Plaintiff's Motion for Leave. [DE #37]. On December 26, 2018,

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement. [DE #58-1].

Defendants filed a Motion to Dismiss with Prejudice. [DE #49]. On January 9, 2019, the parties conducted a deposition in Fort Lauderdale, Florida. After extensive settlement negotiations through counsel following the deposition, the Parties reached a settlement in principle. [DE #55].

**B.    Summary of the Settlement Terms**

The Settlement terms are detailed in the Agreement filed on March 11, 2019. [DE #58-1]. The following is a summary of its material terms.

**1.    *The Settlement Class***

The Settlement Class is defined as:

**All individuals within the United States (i) who were sent and received a text message call (ii) on his or her cellular telephone (iii) by or on behalf of Defendants (iv) from June 16, 2017, the date of formation of Galleria Fitness, through the date of certification.**

Agreement at Section GG.

The Settlement Class excludes the following: (1) the trial judge presiding over this case; (2) Defendants, as well as any parent, subsidiary, affiliate, or control person of Defendants, and their officers, directors, agents, servants, or employees of Defendants; (3) any of the Released Parties; (4) the immediate family of any such person(s); any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel, their employees, and their immediate family. *Id.*

**2.    *Monetary Relief***

The Settlement requires Defendants to make available up to $600,000 for the benefit of the Settlement Class.  Agreement at Section LL.  In order to receive a portion of the Settlement Fund, Settlement Class members required to submit a timely, valid, and verified Claim Form, by the Claim Deadline. Agreement at II.B.1. Each Settlement Class Member who submits a timely, valid, complete and verified Claim Form by the Claim Deadline, making all the required affirmations and representations, is entitled to recover up to $30.00 per text message call, less any Notice and Administration Costs, Attorneys' Fees and Expenses, and Service Award, payable by check and delivered by First Class Mail. *Id.*

3.   *Class Release*

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendants from claims related to the subject matter of the Action. The detailed release language is found in Section V of the Agreement.

4.   *Settlement Notice*

The Notice Program was designed to provide the best notice practicable, and was tailored to take advantage of the information Defendants had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Manuel Hiraldo ("Hiraldo Decl."), attached as **Exhibit 1**, at ¶ 2.   The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

5.   *Service Award*

Class Counsel are entitled to request, and Defendant will not oppose, a Service Award of $5,000 for the Class Representative. Agreement at II.D.  If the Court approves it, the Service Award will be paid from the Settlement Fund.  *Id.*  The Service Award will compensate Class Representative for his time and effort in the Action, and for the risks he undertook in prosecuting the Action against Defendant.

6.   *Attorneys' Fees and Costs*

Class Counsel are entitled to request, and Defendant will not oppose, attorneys' fees of up to 23.33% of the Settlement Fund.

C.  **Argument**

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"

*Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **1.** ***Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.***

On March 12, 2019, Heffler Claims Group, LLC (the "Notice Administrator") received the Class List which contained 22,996 records. These records included names, email addresses, and/or physical mailing addresses of potential Class Members. *See* Declaration of Michael E. Hamer ("Hamer Decl."), ¶7, attached as **Exhibit 2**. In total, 3,809 of the records had a text number that matched a text number covered under the Agreement. *Id*. Of the 3,809 records, 1,132 only had a mailing address while 2,677 had an email address, with some of these records also containing a mailing address. *Id*.

2,677 Email Notices were sent to Class Members contained in the Class List with valid email addresses. Hamer Decl., at ¶12. 429 of the Email Notices attempted were bounced, rejected, or the Class Member unsubscribed to future emails. *Id*. The Notice Administrator had physical addresses on file for 52 of the 429 bounced/rejected/unsubscribed records and included these as part of the Postcard Notice mailing. *Id*. In an attempt to obtain additional mailing addresses, the Notice Administrator sent the remaining 377 bounced/rejected/unsubscribed records through a reverse phone look-up process. The addresses obtained were also included in the Postcard Notice mailing. *Id*.

The Notice Administrator identified 1,531 records with physical addresses eligible for the Postcard mailing. *See* Hamer Decl., at ¶13. In preparation for the Notice mailing, the Notice Administrator sent the records with mailing addresses through an address update and standardization process through the National Change of Address database ("NCOA") maintained by the United States Postal Service ("USPS"). *See* Hamer Decl., at ¶8. The NCOA contains change of address notifications filed with the USPS. If an individual had filed a USPS change of address notification, the address listed with NCOA was used in connection with the mailing of the Postcard Notice. *Id*.

On April 18, 2019, Notice Administrator printed and mailed 1,504 Class Member

Postcard Notice contained in the Class List with mailing addresses via USPS first-class Mail. These Notices advised Class Members of the Settlement, and that they could submit a written request for exclusion postmarked by May 20, 2019 or file an objection postmarked by May 20, 2019. *Id*. The Notices also advised Class Members that in order to receive a Settlement benefit, they must submit a timely and valid claim form through the Settlement website or via mail, by June 5, 2019. *Id*. On May 17, 2019, Notice Administrator mailed Notices to the remaining 27 Class Members on the Class List. *Id*. 5 Postcard Notices have been returned by the USPS with a forwarding address. Hamer Decl., at ¶14. Notice Administrator has updated the addresses for five records in the Settlement database and has re-mailed the Notices to the updated addresses. Hamer Decl., at ¶12.

Notice Administrator also set up, activated, and continues to maintain the toll-free telephone number (1-833-253-8060) with an IVR system. As of May 23, 2019, the toll-free number has logged a total of 62 calls. Hamer Decl., at ¶11. By calling, Settlement Class Members are able listen to answers to frequently asked questions.

The Notice Administrator also established the Settlement Website, www.GymTCPAsettlement.com, which went live on April 5, 2019. *See* Hamer Decl., at ¶10. The website provides an explanation of the Settlement, electronic claim submission, important dates, and posts copies of the: (i) Complaints; (ii) Long Form Notice; (iii) Email Notice; (iv) Postcard Notice; (v) Preliminary Approval Order; (vi) Settlement Agreement, and other pertinent documents. Potential Class Members who learn of the Settlement through any means can obtain copies of these documents through the Settlement Website, 24 hours per day, even if they had not directly received a Class Notice by mail or email. Hamer Decl., at ¶10. The Settlement Website continues to be fully operational and fully functional. As of May 23, 2019, the Settlement Website has had 8,440 visits. *Id*.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and

place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement and other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to $140,000 or up to approximately 23.3% of the Settlement Fund and a Service Award of $5,000.00 for the Class Representative.  Hence, Settlement Class members were provided with notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of May 23, 2019, the Notice Administrator had received no requests for exclusion and no correspondence objecting to the Settlement. *See* Hamer Decl., at ¶16. The opt-out and objection period ended on May 20, 2019.

### 2.     *The Settlement Should Be Approved as Fair, Adequate and Reasonable.*

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

  (1)  the existence of fraud or collusion behind the settlement;
  (2)  the complexity, expense, and likely duration of the litigation;
  (3)  the stage of the proceedings and the amount of discovery

completed;

(4)     the probability of the plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be fair, adequate and reasonable.

### a.    There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by counsel throughout the negotiations. All negotiations between Class Counsel and Defendants' counsel were arm's-length and exhaustive. Hiraldo Decl. ¶ 3.

### b.    The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted discovery, Galleria Fitness' deposition and after engaging in motion practice. Hiraldo Decl. ¶ 4. Specifically, Class Counsel reviewed numerous pages of documents and electronic data. Class Counsel also spent considerable time researching and briefing Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendants' defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. Hiraldo Decl. ¶ 5.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Class Counsel believes that Plaintiff had a strong case against Defendants. Hiraldo Decl. ¶ 6. Even so, Class Counsel are mindful that Defendants advanced significant defenses which Plaintiff would have had to overcome in the absence of the Settlement. *Id*. This Action involved several major litigation risks that loomed in the absence of settlement

including, but not limited to, Defendants' motion to dismiss the First Amended Complaint, class certification, trial, as well as appellate review following a verdict. *Id*. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Hiraldo Decl. ¶ 7. The uncertainties and delays from this process would have been significant. *Id*.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g*., *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

> **e.    The Benefits Provided by the Settlement are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*. Further, the Court is not charged with choosing the best payment structure or with deciding if a claims-made structure is absolutely necessary, only with determining whether the settlement presented is fair, reasonable, and adequate given the inherent risks and expense of further litigation. *See Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315 at *41 (S.D. Fla. April 13, 2016; *see, e.g., Casey v. Citibank, N.A.,* No. 13-cv-820, 2014 U.S. Dist. LEXIS 156553, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) (claims-made structure fair, reasonable, and adequate and "[t]he Court does not have the authority to impose a preferred payment structure upon the settling parties"). "While a claims-made structure does not guarantee an award to all class members, it does tend to maximize the opportunity available to each class member." *Braynen v. Nationstar Mortg., LLC,* No. 14-cv- 20726, 2015 U.S. Dist. LEXIS 151744, 2015 WL 6872519, at *14 (S.D. Fla. Nov. 9, 2015).

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Hiraldo Decl. ¶ 8. Each Settlement Class Claimant who opted to participate in the settlement will receive up to $30.00 per text message received.  Settlement Class Members can continue to submit Claim Forms up and through June 5, 2019. Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for each violative message received upon a successful verdict at trial, but such a result was very uncertain.

This Settlement provides a fair and reasonable recovery to Settlement Class members when considering Defendants' defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts.  Hiraldo Decl. ¶ 9. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

### f. Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Hiraldo Decl. ¶ 10.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

To date, no Settlement Class member has objected to the Settlement. Hiraldo Decl. ¶ 11. This is another indication that the Settlement Class is clearly satisfied with the Settlement.  Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3. *The Court Should Certify the Settlement Class.*

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### ***Standing***

"In order to establish Article III standing to bring a suit, a plaintiff has the burden to show that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 41023, at *2-3 (S.D. Fla. Mar. 22, 2017) (quoting *Spokeo , Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "A plaintiff attains an injury in fact when he 'suffer[s] an invasion of a legally protected interest that is concrete and particularized[,] and actual or imminent, not conjectural or hypothetical.'" *Id.* at *3.

Most recently, the Eleventh Circuit addressed standing in the context of a claim under the Fair and Accurate Credit Transactions Act ("FACTA"), holding that the plaintiff had standing as a result of the defendant's printing of a credit card receipt that showed the card number's first six and last four digits. *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-16486, 16-16783, 2019 U.S. App. LEXIS 11630, at *3 (11th Cir. Apr. 22, 2019), appeal denied by, affirmed by *Muransky v. Godiva Chocolatier, Inc.,* 2016 U.S. Dist. LEXIS 133694 (S.D. Fla., Sept. 28, 2016). The Eleventh Circuit noted that "a plaintiff is not required to demonstrate the merits of his case in order to establish his standing to sue." *Id.* at *12 (citing *Pedro v Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017)). Next, the Eleventh Circuit noted that even after "*Spokeo* as before, 'intangible' injuries…may satisfy Article III's concreteness requirement," and that "*Spokeo* made no change to the rule that 'a small injury, 'an identifiable trifle,' is sufficient to confer standing.'" *Muransky*, 2019 U.S. App. LEXIS 11630, at *15 (citing *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973))). Ultimately, in holding that the plaintiff had standing, the Eleventh Circuit concluded that "where Congress elevates the risk of harm to a concrete interest to the status of a concrete injury, the risk need be no more than an 'identifiable trifle' to be concrete." *Muransky*, 2019 U.S. App. LEXIS 11630, at *117 (quoting *Billups*, 554 F.3d at 1351).

Here, Plaintiff has standing under the TCPA to bring his claim. The TCPA is a "consumer protection statute[] that confer[s] on [P]laintiff[] the right to be free from certain harassing and

privacy-invading conduct." *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *see also Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664, 666 (11th Cir. 2018) ("Congress provided [Plaintiff] that right through the TCPA, and she had that right (and could assert it through litigation against [Defendant]…") (citing 47 U.S.C. § 227). This includes being free from "certain prohibited calls." *Tillman v. Ally Fin. Inc.*, No. 2:16-cv-313-FtM-99CM, 2017 U.S. Dist. LEXIS 71919, at *16 (M.D. Fla. May 11, 2017) (finding that receipt of such prohibited calls "is an injury that Congress has elevated to the status of a legally cognizable injury through the TCPA"); *Manno*, 289 F.R.D. at 682 (holding "[plaintiff] has alleged [d]efendants' conduct violated [the TCPA], and that is enough to confer upon him standing under Article III").

The injury alleged by Plaintiff here is particularized. Indeed, Plaintiff allegedly received a prohibited call from Defendant on his cell phone without his consent, and, thus, he was affected in a "personal and individual way." *Mohamed*, 2017 U.S. Dist. LEXIS 41023, at *3. This injury, even if construed as intangible, is also concrete. *Id.* Again, as held by the Eleventh Circuit, "'where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights.'" *Eisenband v. Schumacher Auto., Inc.*, No. 18-cv-80911, 2018 U.S. Dist. LEXIS 181272, at *3 (S.D. Fla. Oct. 22, 2018) (Bloom, J.) (quoting *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (quoting *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015))). "The Eleventh Circuit, pre- and post-*Spokeo*, has held that the TCPA 'creates such a cognizable right.'" *Id.* (citing *Palm Beach Golf*, 781 F.3d at 1251).

### *Certification under Rule 23(a)*

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 3,800 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is satisfied. There are multiple questions of law and fact – centering on Defendants' text messaging program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because he received a text message and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).   Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member.   The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class. The Settlement is fair, adequate and reasonable.

## III.   APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendants do not oppose, a Service Award for the Class Representative in the amount of $5,000. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.  *See, e.g*., *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information to Defendants' formal discovery requests. Hiraldo Decl. ¶ 12. Based on the foregoing, a Service Award of $5,000 is reasonable.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees equal to 23.33% of the Settlement Fund. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).   For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A.    The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at

\*20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

The Court has discretion in determining the appropriate fee percentage.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

>     (1)      the time and labor required;
>     (2)      the novelty and difficulty of the relevant questions;
>     (3)      the skill required to properly carry out the legal services;
>     (4)      the preclusion of other employment by the attorney as a
>     result of his acceptance of the case;
>     (5)      the customary fee;
>     (6)      whether the fee is fixed or contingent;
>     (7)      time limitations imposed by the clients or the
>     circumstances;
>     (8)      the results obtained, including the amount recovered for the
>     Clients;
>     (9)      the experience, reputation, and ability of the attorneys;
>     (10)     the "undesirability" of the case;
>     (11)     the nature and the length of the professional relationship
>     with the clients; and
>     (12)     fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  The Eleventh

Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.  As applied, the *Camden I* factors support the requested fee.

### 1. *The Claims Against Defendants Required Substantial Time and Labor.*

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable.  Hiraldo Decl. ¶ 14. Class Counsel devoted substantial time to investigating the claims against Defendants and litigating the case.  Hiraldo Decl. ¶ 15.  Time and resources were also dedicated to conducting formal party discovery, motion practice, and the deposition of Galleria Fitness' party representative. Hiraldo Decl. ¶ 17.

Settlement negotiations consumed further time and resources. Hiraldo Decl. ¶ 18.  Finally, time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order.  All of this work consumed a substantial amount of time.  All told, Class Counsel's coordinated work paid dividends for the Settlement Class.  Each of the above-described efforts was essential to achieving the Settlement before the Court.  The time and resources devoted to this Action readily justify the requested fee.

### 2. *The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.*

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  Class Counsel's legal work conferred a benefit on the Settlement Class in the face of litigation obstacles and required the acquisition and analysis of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel.  Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues and litigating the novel issue of whether the software used to make the calls was an ATDS, as defined by the TCPA. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel.  *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654.  Throughout the litigation, Defendants were represented by capable counsel.  Defendants' counsel was a

worthy, competent adversary. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3.     *Class Counsel Achieved a Successful Result.*

Given the litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit of up to $30.00 per text message.  Hiraldo Decl. ¶ 21.

### 4.     *The Claims Presented Serious Risk.*

The Settlement is particularly noteworthy given the combined litigation risks.  Hiraldo Decl. ¶ 22. As discussed, Defendants raised meritorious defenses. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Hiraldo Decl. ¶ 23. Defendants were confident in their opposition to Plaintiff's claims. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not prevented, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is a fair and reasonable recovery for the Settlement Class in light of Defendants' defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Hiraldo Decl. ¶ 24.

### 5.     *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.*

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Hiraldo Decl. ¶ 25. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Hiraldo Decl. ¶ 26. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses Class Counsel advanced. Hiraldo Decl. ¶ 27. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

**6.     *The Requested Fee Comports with Fees Awarded in Similar Cases.***

Counsel's requested fee of 23.33% of the Settlement Fund, is well within the range of fees typically awarded in similar cases. Hiraldo Decl. ¶ 28. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I. See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See In re Continental* III. Sec. Litig., 962 F.2d 566,572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever

amount the Plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested here, which is well below the cases cited, is appropriate and should be awarded.

## V.      CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **<u>Exhibit 3</u>**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I of the Agreement; (5) approve the requested Service Award in the amount of $5,000; (6) award Class Counsel attorneys' fees in the amount of 23.33% of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice.

<u>**CERTIFICATE OF GOOD FAITH CONFERRAL**</u>

The undersigned attorney, in compliance with S.D. Local Rule 7.1(a)(3), certifies that the movant has conferred with counsel for Defendants, and that Defendants do not oppose the relief sought.

Dated: May 28, 2019

Respectfully submitted,

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301

*/s/ Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  May 28, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/Michael Eisenband*
Florida Bar No. 94235
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092
*Counsel for Plaintiff and the Class*